IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN JOSEPH SIMMONS,<br><br>        Plaintiff,<br><br>  v.<br><br>GREG D. LEWIS; J. MARVIN; C. ECKELBARGER; T. FARLEY; D. THOMAS,<br><br>        Defendants.<br>                                      / | No. C 12-1508 WHA (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO DISMISS AND MOTION TO STAY DISCOVERY AS MOOT**<br><br><br>(Docket Nos. 31 & 39) |

**INTRODUCTION**

Plaintiff filed this *pro se* civil rights action under 42 U.S.C. 1983 claiming that Correctional Officers C. Eckelbarger, T. Farley, J. Marvin and D. Thomas[1] at Pelican Bay State Prison ("PBSP") used excessive force, and that Warden G. Lewis is liable as a supervisor. Defendants filed a motion to dismiss and a motion for summary judgment, and served plaintiff with the warning about summary judgment motions required by *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc). Plaintiff filed an opposition, and defendants filed a reply brief. For the reasons discussed below, the motion for summary judgment is **GRANTED**.

---

[1] The summons issued to defendant D. Thomas was returned unserved with a note indicating that more identification information was needed. (Docket No. 10.) Accordingly, defendant Thomas has not been served with this action.

**STATEMENT**

The following facts are undisputed unless otherwise indicated.

PBSP has a uniform policy governing the use of force, and PBSP staff receives training on the appropriate use of force and on compliance with such polices and procedures. (Lewis Decl. ¶¶ 4-5, Ex. A.) The policy states that employees may use reasonable force as required in the performance of their duties, and defines reasonable force as "the force that an objective, trained, and competent correctional employee faced with similar facts and circumstances, would consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order." (*Id.*, Ex. A at 1-2.) The policy authorizes employees to use "immediate force" without prior authorization from a higher official; "immediate force" is defined as "the force used to respond without delay to inmate behavior that constitutes an immediate threat to institution/facility security or the safety of persons." (*Id.* at 2.) Use of force under the policy includes, but are not limited to, chemical agents, hand-held batons and physical strength and holds. (*Id.* at 4.) The policy clarifies that oleoresin capsicum (OC) spray is the preferred option for carrying out the immediate use of force for inmates confined to their cells. (*Id.* at 6.)

On July 26, 2011, defendant Marvin went to conduct a cell search of plaintiff's cell because he smelled marijuana smoke coming from the cell. (Custodian of Records Decl. (Records Decl.), Ex. A.) Defendants Eckelbarger and Farley also approached the cell to provide assistance. (Eckelbarger Decl. ¶ 5.) Marvin ordered plaintiff several times to exit the cell for a cell search, but plaintiff refused and became agitated; he started to pace the cell and yelled, "Fuck you – I ain't coming out." (Records Decl., Ex. A; Eckelbarger Decl. ¶ 8; Farley Decl. ¶¶ 5-6.) Plaintiff then went to the back of his cell, put on a pair of gloves, clenched his fists, took a bladed stance and charged at Marvin. (*Ibid.*)

Fearing an assault, Marvin sprayed plaintiff with OC spray in the face and head. Marvin repeated his order to plaintiff to turn around and back out of the cell. Plaintiff disregarded that order and charged Marvin again, causing Marvin to spray plaintiff with OC a second time.

2

1  When plaintiff continued to charge at Marvin and Eckelbarger, the latter also sprayed plaintiff
2  with OC out of concern for their safety. Plaintiff ran through the spray, charged out of his cell
3  and punched Marvin in the chest. (Records Decl., Ex. A; Eckelbarger Decl. ¶¶ 8-14; Farley
4  Decl. ¶¶ 6-7.)

5  In order to defend himself, Marvin struck plaintiff with a state-issued baton and hit
6  plaintiff on his right shoulder, causing him to fall to the ground. Plaintiff ignored defendants'
7  orders to stay down and continued to getup and resist Marvin, Eckelbarger and Farley's efforts
8  to subdue him. Eckelbarger attempted to hold plaintiff on the ground by using his body weight,
9  but plaintiff forced himself onto his hands and knees and tried to knock Eckelbarger off of him.
10 With their batons, Marvin struck plaintiff in the thigh and Farley struck plaintiff twice on his
11 right shoulder in order to gain control and protect themselves. (Records Decl., Ex. A;
12 Eckelbarger Decl. ¶¶ 14-16; Farley Decl. ¶¶ 7-10.)

13 Defendants finally managed to control plaintiff and place him in handcuffs and leg
14 restraints. Plaintiff was taken for OC spray decontamination, after which medical staff took
15 plaintiff to the prison hospital for further medical evaluation. Defendants's were not involved
16 in plaintiff's medical treatment, as their involvement ended once plaintiff underwent OC spray
17 decontamination. (Records Decl., Ex. A; Eckelbarger Decl. ¶¶ 16-19; Farley Decl. ¶¶ 10-12.)

18 Plaintiff was issued a rules violation report for battery on a peace officer because he
19 punched Marvin. (Records Decl., Ex. B.) In defense, plaintiff asserted that he was the victim
20 of excessive force, but the hearing officer determined that there was no merit to his claim.
21 (*Ibid.*) Plaintiff was found guilty and lost 150 days of good-time credits. (*Ibid.*) The matter
22 was looked into a second time as a "staff complaint appeal inquiry," but it was determined that
23 staff did not violate CDCR policy or use excessive force during the incident. (*Id.*, Ex. C.)

24 According to plaintiff, he was preparing legal briefs when he was attacked by
25 defendants inside his cell without provocation. (Compl. Attach. 45-46.) Plaintiff claims that
26 defendants, in addition to beating him with batons and spraying him with OC, stomped on his
27 back and legs, and that they tried to force him to strangle himself. (*Id.* at 44-45.) He also

28

3

1 claims that the medical staff strapped him to a board and took him to an isolated location, where
2 they attached a device around his right arm which made his whole body convulse. (*Id.* at 46.)
3 He claims that his injuries from this incident were so severe that he was transported by
4 ambulance to the Sutter Coast Hospital in Crescent City. (*Id.* at 45.) Plaintiff claims that a false
5 report was written and submitted to the Del Norte County District Attorney's Office for
6 possible prosecution, and that the DA declined to prosecute. (*Ibid.*) Plaintiff claims that
7 defendants were under the charge of defendant Warden Greg D. Lewis when they attacked him,
8 and that their actions violated the Eighth Amendment.

## ANALYSIS

### A. MOTION FOR SUMMARY JUDGMENT

#### 1. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Ibid*.

#### 2. LEGAL ANALYSIS

In order to state a claim for the use of excessive force in violation of the Eighth

4

Amendment, plaintiff must allege facts that, if proven, would establish that prison officials applied force "maliciously and sadistically to cause harm," rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The extent of injury suffered by an inmate is one of the factors to be considered in determining whether the use of force is wanton and unnecessary. *Ibid.* Not every malevolent touch by a prison guard gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9-10. Guards may use force only in proportion to the need for it in each situation. *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979).

In determining whether the use of force was for the purpose of maintaining or restoring discipline or, rather, for the malicious and sadistic purpose of causing harm, a court may evaluate the need for the application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. However, courts must accord prison administrators wide-ranging deference in the adoption and execution of policies and practices to further institutional order and security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

Based on the evidence submitted, Plaintiff has failed to raise a triable issue as to whether defendants used excessive force by spraying him in the eyes and face with OC spray and striking him with their batons. To overcome the summary judgment motion, plaintiff must raise a triable issue of fact establishing that defendants applied force "maliciously and sadistically to cause harm," rather than in a good-faith effort to maintain or restore discipline. He has filed to do so.

First of all, the evidence shows that the application of force was necessary to restore order and protect defendants. Marvin went to search plaintiff's cell because he smelled what he believed to be marijuana smoke coming from his cell. *See supra* at 2. When he ordered

5

1 plaintiff to exit the cell, plaintiff refused to comply and instead became aggressive; he then put
2 on a pair of gloves, clenched his fists, and took a bladed stance before he charged at Marvin.
3 *Ibid*. Fearing an assault, Marvin sprayed OC, and when plaintiff continued to resist, he used his
4 baton. Plaintiff also resisted Eckelbarger and Farley's efforts to subdue him. Plaintiff's
5 behavior required defendants to respond to subdue his attack and overcome his resistance.
6 Their actions were in compliance with PBSP's use-of-force policy to use immediate force in
7 response to an imminent threat to their safety. *Ibid.*

8 Secondly, the amount of force used was reasonable in relation to the need. Plaintiff
9 refused to leave his cell despite Marvin's repeated orders, and he also ignored defendants'
10 numerous commands to stop resisting. Marvin sprayed OC only when plaintiff began to charge
11 him; he used OC again when plaintiff charged him a second time. Eckelbarger sprayed OC
12 when plaintiff charged him and Marvin. Only after plaintiff punched him did Marvin use his
13 baton to defend himself. Eckelbarger used his body weight to force plaintiff to remain on the
14 ground. When plaintiff ignored defendants' commands to stay down and continued to resist,
15 Marvin and Eckelbarger each struck plaintiff with their batons in order to gain control. *See*
16 *supra* at 3. Under these circumstances, defendant used only the amount of force necessary to
17 defend themselves, subdue plaintiff and gain control.

18 In addition, defendants reasonably perceived a threat during the course of this incident.
19 Marvin reasonably feared an assault when he observed plaintiff's response to his command to
20 exit the cell for a search; plaintiff appeared agitated and verbally refused to come out of his cell
21 after which he put on gloves and prepared to charge Marvin. When Eckelbarger arrived at the
22 scene, plaintiff also charged him. Plaintiff intentionally and did in fact punch Marvin. Plaintiff
23 refused to comply to defendants' orders and physically resisted. Defendants were reasonable in
24 perceiving a threat to their own safety and prison security. *See supra* at 3.

25 Defendants also used no more force than necessary to gain control of plaintiff. They did
26 not initiate the use of force or prolong the use beyond the time necessary. They applied OC
27 spray, batons and physical strength in that order as the situation escalated due to plaintiff's
28

6

continual resistance. Defendants sprayed plaintiff when he charged at them, and then they applied batons, a total of four times, and physical strength when plaintiff struck Marvin and continued to physically resist being subdued. Defendants immediately ceased the use of force once plaintiff was restrained and under control.

Furthermore, plaintiff's injuries, which were not serious, did not necessarily indicate that the force used by defendants was excessive. Plaintiff received treatment at Sutter Coast Hospital, where he was diagnosed with a bruised head. (Declaration of Health Records Custodian.) The diagnostic tests that plaintiff underwent showed nothing remarkable, and he was discharged the same day. (*Ibid*.)

In his opposition, plaintiff claims that his version of events and that of defendants are "squarely contradictory" and repeats his assertion that defendants used excessive force. (Oppo. 7-8.) At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The district court may not resolve disputed issues of material fact by crediting one party's version of events and ignoring another. *Wall v. County of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004). "By deciding to rely on the defendants' statement of fact [in deciding a summary judgment motion], the district court became a jury." *Id.* But "[w]hen opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-83 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits plaintiff's claim that there was little or no actual threat to innocent bystanders). Here, plaintiff's allegations are contradicted by the incident

7

reports filed by all three defendants which corroborate their version of events. Furthermore, the staff complaint response concerning plaintiff's excessive force claims concluded that staff did not violate CDCR policy. (Records Decl. Ex. C.)

Under these circumstances, a finder of fact could reasonably conclude that the use of force by defendants was necessary to maintain order, and that their use of OC spray, batons and physical strength was acceptable under the circumstances. Plaintiff claims that defendants filed a false rules violation report to cover up their use of excessive force. However, plaintiff does not explain why the physical altercation ended up outside the cell rather than inside. Other than his general allegations, plaintiff had failed to present any evidence that defendants applied force "maliciously and sadistically to cause harm," rather than in a good-faith effort to maintain or restore discipline. *Hudson*, 503 U.S. at 6-7. Accordingly, plaintiff has failed to establish a triable issue of fact that he was subjected to excessive force by defendants. Defendants are therefore entitled to judgment as a matter of law this excessive force claim.

### 3. Qualified Immunity

Defendants claim that summary judgment is also proper in this case because they are entitled to qualified immunity from liability for civil damages. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as had been required by *Saucier*, and holding that a court may exercise its

8

discretion in deciding which prong to address first, in light of the particular circumstances of each case). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that her or his conduct was unlawful in the situation she or he confronted. *Saucier*, 533 U.S. at 201-202.

Here, the evidence does not indicate that defendants' actions rose to the level of a constitutional violation. However, assuming that plaintiff was deprived of a constitutional right, the next prong is whether defendants' conduct was clearly unlawful. It was not. Defendants have produced sufficient evidence that a reasonable officer in their position would have believed that their actions were reasonable based on the circumstances they confronted. Marvin was reasonable in deciding to search plaintiff's cell when he smelled what he believed to be marijuana smoke coming from the cell. Plaintiff refused to comply to Marvin's orders to exit the cell and attacked him. Marvin feared for his safety and acted to defend himself when he sprayed plaintiff with OC. Eceklbarger also responded to protect Marvin and himself from the attack when he sprayed OC. Plaintiff continued to physically resist defendants' attempts to subdue him such that the use of batons and physical strength became necessary. Based on plaintiff's aggressive behavior and physical resistance, it would not have been clear to a reasonable officer that the immediate use of force by defendants were unlawful. Additionally, a reasonable officer in defendants' position would have thought it lawful to use OC spray, batons and physical strength on plaintiff after he disobeyed orders, especially in light of CDCR's use-of-force policy. Because the law and circumstances on July 26, 2011 did not put defendants individually on notice that their conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *See Saucier*, 533 U.S. at 202. Accordingly, defendants' motion for summary judgment based on qualified immunity is GRANTED.

Based on the evidence, there is no genuine issue of material fact and defendants Marvin, Eckelbarger and Farley are entitled to summary judgment on plaintiff's excessive force claim under § 1983.

///

9

///

## B. Claims Against Remaining Defendants

### 1. Defendant G. Lewis

Plaintiff claims that Warden G. Lewis is liable for the unconstitutional acts of his subordinates as a supervisor. This claim fails because plaintiff does not allege that defendant Lewis was ever directly involved with the July 26, 2011 incident or that he was ever personally aware of plaintiff's situation. Supervisor defendants are entitled to qualified immunity where the allegations against them are simply "bald" or "conclusory" because such allegations do not "plausibly" establish the supervisors' personal involvement in their subordinates' constitutional wrong. *Ashcroft v. Iqbal*, 556 U.S. 662, 675-84 (2009) (noting no vicarious liability under Section 1983 or *Bivens* actions). So it is insufficient for a plaintiff only to allege that supervisors knew about the constitutional violation and that they generally created policies and procedures that led to the violation, without alleging "a *specific* policy" or "a *specific* event" instigated by them that led to the constitutional violations. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (emphasis in original); *cf. Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (finding no qualified immunity where plaintiff pled specific facts that plausibly suggest supervisors' "knowledge of" and "acquiescence in" unconstitutional conduct of subordinates).

If the defendant is a supervisor who had no direct involvement in or direct management responsibility for the alleged constitutional deprivation, the qualified immunity defense must be examined within the context of policy-level activities. *Jeffers v. Gomez*, 267 F.3d 895, 916 (9th Cir. 2001) (suggesting that director of state prison system could be held liable for inadequate training of prison guards on how to respond to a prison riot only if prison director recklessly, maliciously or deliberately established policies that caused Eighth Amendment violations). Here, plaintiff has failed to provide evidence showing that defendant Lewis was ever personally involved or connected to the alleged use of excessive force. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. at 667. Plaintiff makes no factual allegations against

10

defendant Lewis indicating that he knew personally that plaintiff faced a violation of his Eighth Amendment rights and failed to prevent it. Accordingly, defendant Lewis is entitled to qualified immunity. *Id.* at 675-84.

### 2. Unserved Defendant D. Thomas

As noted, defendant D. Thomas has not been served. *See supra* at 1, n. 1. The claim against defendant Thomas appears are based on the same set of facts as the claims against defendants Marvin, Eckelbarger and Farley. As discussed above, however, there is no evidence that these defendants used excessive force on the date at issue, and it is unlikely that the claim against unserved defendant Thomas would survive summary judgment. *See Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 803 (9thCir. 1995) (affirming district court's granting summary judgment in favor of nonappearingdefendant, where plaintiff, in response to motion filed by defendant who had appeared, had " full and fair opportunity to brief and present evidence" on dispositive issue as to claim against non-appearing defendant). Furthermore, plaintiff makes no specific factual allegations with respect defendant Thomas' actions during this incident in his complaint or in his opposition, and the incident reports and submitted documents make no mention of Thomas' involvement in the incident. Accordingly, summary judgment will be granted in favor of defendant Thomas.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (docket number 39) is **GRANTED**. The motion to dismiss and motion to stay discovery (dkt. 39) are **DENIED** as moot. The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: September 24, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

C:\Documents and Settings\USDC\Local Settings\Temp\notes56FD74\SIMMONS1508.MSJ.hhl.wpd

11